UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN CRUZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSQUARE MEDIA, INC, et al.,<br><br>Defendants. | Case No. 25-cv-03902-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 10, 16 |

Plaintiffs Jonathan Cruz, III, ("Cruz") and Cruz Collaborative Architecture, LLC, (together the "plaintiffs") have once again sued defendants Townsquare Interactive, Townsquare Media, Inc., and Townsquare Interactive's General Manager and President Tim Pirrone (together the "defendants"), asserting breach of contract, breach of the implied covenant of good faith, fraud, negligence, and intentional infliction of emotional distress. The claims arise from an agreement that Cruz signed in November 2022 with Townsquare Interactive for website design and search engine optimization ("SEO") services.[1] This is the second lawsuit that plaintiffs filed asserting essentially identical facts and causes of action; I dismissed the first without prejudice in August 2024 for failure to prosecute and then related this case to that one.

The defendants now move to dismiss because the plaintiffs failed to file a timely opposition and failed to state a claim. The complaint has fundamental deficiencies that need to be fixed if this case is to proceed.[2] Each cause of action lacks specificity and is implausible. The

---

[1] Hereafter, I refer to this as the "Agreement".

[2] At the July 16, 2025, hearing on this matter, counsel for the defendants failed to appear and plaintiffs' counsel sent a lawyer who has never entered an appearance in this case to appear specially. Upon hearing my tentative ruling granting the motion to dismiss, the specially appearing counsel for plaintiffs offered no argument against dismissal. I expect lawyers retained by the parties to appear in future proceedings.

1  motion to dismiss is GRANTED with leave to amend.  I admonish plaintiffs to proceed in a timely
2  manner if they wish to litigate this case further.

## BACKGROUND

### A. Previous litigation

In 2023, the plaintiffs filed a very similar action to this one in the Superior Court of California, County of Contra Costa.  *See Cruz et al. v. Pirrone*, No. 23-cv-05205 (N.D. Cal. removed Oct. 12, 2023) ("*Pirrone*").  Defendants removed *Pirrone* to this court and then moved to dismiss it.  Plaintiffs in *Pirrone* did not oppose the motion timely.  Magistrate Judge Alex Tse issued an order to show cause to explain why a timely opposition to the motion to dismiss had not been filed.  *Pirrone*, Dkt. No. 18.  The plaintiffs eventually filed an opposition.

In evaluating the motion to dismiss, Judge Tse determined that there was a "fourth named defendant, Ignite Operations," whose presence was unexplained in the case (and that the other defendants said did not exist).  *See id.*, Dkt. No. 28 (J. Tse Order).  Judge Tse held, "Unless plaintiffs voluntarily dismiss their claims against Ignite, or unless plaintiffs serve Ignite with process and Ignite enters a notice of appearance and consents to magistrate jurisdiction, the undersigned won't be able to resolve the pending motion to dismiss." *Id.*  Judge Tse then ordered plaintiffs to "submit a supplemental statement in which they explain how they intend to proceed with their claims against Ignite." *Id.*  Judge Tse's set deadline passed and the plaintiffs did not file the statement as ordered.  *See Pirrone*, Dkt. No. 29.  Accordingly, Judge Tse issued an Order to Show Cause ("OSC"), requiring the plaintiffs to (1) file their supplemental statement as previously ordered, and (2) file a response to the OSC, explaining why the supplemental statement was not timely filed. *Id.* Dkt. No. 29.  Judge Tse warned that failure to comply with the OSC may lead to dismissal without prejudice pursuant to Fed. R. Civ. P. 41(b).

The plaintiffs did not file a supplemental statement or response.  Judge Tse then issued a Report and Recommendation, recommending dismissal of the action under Rule 41(b) for failure to prosecute, without prejudice.  I adopted Judge Tse's Report and Recommendation, and the case was dismissed without prejudice on August 5, 2024.  *Pirrone*, Dkt. Nos. 31, 32.

A few months later, in October 2024, the plaintiffs filed this action in the Superior Court of

California, County of Contra Costa, asserting the same causes of actions asserted in *Pirrone* against the same defendants (including Ignite Operations). *Compare Cruz v. Townsquare et al.*, No. 25-cv-03902 (N.D. Cal. removed May 5, 2025), Dkt. No. 1-1 (Complaint, or "Compl."), *with Pirrone*, Dkt. No. 1-1 (*Pirrone* Complaint). The plaintiffs asserted (1) breach of contract, (2) fraudulent deceit, (3) breach of good faith and fair dealing, (4) promissory fraud, (5) intentional infliction of emotional distress, and (6) negligence. The state court set the matter for an Order to Show Cause on June 4, 2025, for dismissal for failure to prosecute.

Townsquare Media removed the case on May 5, 2025. *See* Dkt. No. 1 (Notice of Removal). The case was initially assigned to the Hon. Trina Thompson. After it was assigned to Judge Thompson, defendants Townsquare Media, Townsquare Interactive, and Pirrone moved to dismiss the case in its entirety. Motion to Dismiss ("Mot.") [Dkt. No. 10]. Responses to that motion were due on May 28, 2025. The plaintiffs failed to file a timely opposition to that motion, which defendants noted in their Notice of Non-Opposition, Dkt. No. 12. On June 10, 2025, Judge Thompson issued a Judicial Referral for the Purposes of Determining whether this case was related to *Cruz v. Pirrone*, 23-cv-5205 (N.D. Cal.). I found that it was and related the cases. Dkt. No. 14. Thereafter, pursuant to the Clerk's notice at Dkt. No. 15, defendants re-noticed their motion to dismiss. *See* Dkt. No. 16. On June 23, 2025, almost a month after the response was due, the plaintiffs filed an Opposition/Response to the Motion to Dismiss. Dkt. No. 18. Defendants filed an objection to the late-filed Opposition in lieu of a substantive Reply. Dkt. No. 19.

**A.     Allegations**

**1.     The Agreement**

On or about November 30, 2022, Jonathan Cruz and Townsquare Interactive entered into a written agreement for website and search engine optimization ("SEO") services at a rate of $199/month. Compl. ¶ 8. The Agreement identified "Cruz Collaborative Architecture, LLC" as the business benefitting from the SEO services. A copy of the Agreement is attached as Exhibit A

to the defendants' Request for Judicial Notice ("RJN"). [3]

The Agreement states that by "signing below, Customer acknowledges and agrees to the Terms and Conditions included in this document." RJN Ex. A. The Agreement then includes, in the margin below the signature line, a hyperlink to Townsquare Interactive's Terms of Service, which is found on its website and of which the defendants also seek judicial notice. The Terms of Service contains a Limitation of Liability provision limiting damages "to the total amount of fees actually paid by client to Townsquare Interactive during the three (3) month period immediately preceding the arising of the relevant claim or action," and prohibiting punitive and consequential damages (Section 7), a disclaimer of warranties, an "as is" provision and an integration clause. *See* RJN, Ex. B. As I discuss in greater detail later in this Order, the Terms of Service and their constituent liability limitation provision are not contained within or incorporated into the Agreement that Cruz signed.

### 2. The website and SEO services

On or about December 14, 2022, Cruz received an email from defendants' Project Manager, Alexander Gomes, informing him that the SEO campaign for which the parties had contracted had launched and was live. Compl. ¶ 9. At that point, Cruz "expressed dissatisfaction" with the launch and the website's build, and "request[ed] its immediate removal due to numerous issues." *Id.* ¶ 11. After Gomes and Cruz spoke on the phone, Cruz continued to have issues with the website revisions, which he expressed via email. *See* Compl. ¶ 12(1)-(6).[4]

On or before December 28, 2022, Cruz emailed the defendants inquiring about the status of his requested revisions and asking for login information. Abby Clemons, the new "point of contact" for the SEO project, responded, provided the login information, and indicated that the edits would be completed by the end of that week. *Id.* ¶ 15. On January 5, 2023, after having

---

[3] In the Complaint, the plaintiffs stated that they attached a copy of the Agreement, but they did not. The defendants attached a copy to their Request for Judicial Notice. I address the RJN later, *see* discussion *infra* "Discussion" Section B(1)(a).

[4] In the state court complaint, plaintiffs repeatedly assert that the emails being discussed are "attached" as "exhibits" to the complaint, but no such exhibits were included. All references in this Order to email conversations are drawn from the allegations within the Complaint.

4

followed up with Clemons about the revisions and receiving no response, Cruz emailed Clemons again and requested a refund of "$200" "as the service was unsatisfactory." *Id.* ¶ 18.[5] According to the Complaint, Clemons responded, explaining that Townsquare Interactive "operate[s] on a proprietary platform" and that if Cruz wished to "cancel" he would need to "rebuild [his] website elsewhere." *Id.* ¶ 19.  Cruz responded that the contract "did not mention the use of a proprietary platform" and again requested a refund. *Id.*

On January 10, 2023, Cruz emailed Clemons "requesting the complete removal of Defendants from his domain, as he had no access, and demanded that Defendants transfer the domain back to GoDaddy." *Id.* ¶ 21.  On January 16, 2023, Cruz "followed up with additional emails to both Abby Clemons and Alexander Gomes," but the defendants "ceased communication after [Cruz] raised concerns about their promises and threatened legal action." *Id.* ¶ 22.

The "numerous errors" on the website, together with the defendants' decision to launch it "premature[ly]" "without Plaintiffs' approval," undergird the plaintiffs' claim for breach of contract. *Id.* ¶¶ 23-40.  Plaintiffs allege that defendants breached the terms of the Agreement by failing to meet the standards expected of the contracted services insofar as they provided "low-resolution images despite Plaintiffs supplying high-resolution versions," "[f]ail[ed] to center text properly, thereby failing to deliver a professional product," "[u]s[ed] language that could have led to [trademark or licensing] issues for Plaintiffs," and "[d]eliver[ed] non-functional buttons and incorrect titles, undermining the usability of the website." *Id.*  Plaintiffs also allege that these errors somehow led to email disruptions that in turn caused "communication failures with clients," and that the errors "[c]aus[ed] plaintiffs to lose a long-term client who had promised eight (8) projects valued at $150,000 for the year 2023, with potential impacts for 2024 and beyond." *See* Compl. ¶¶ 28-39.  The Complaint does not identify what provisions of the Agreement the defendants allegedly breached or how the alleged violations caused them to lose a client and associated revenue.

These same allegations form the basis for the plaintiffs' breach of implied covenant,

---

[5] Presumably, this $200 corresponds to the $199.00 that plaintiffs had paid for the first month of this service, pursuant to the terms of the contract.

5

promissory fraud, and negligence claims. *See id.* ¶¶ 49-68, 75-81. Plaintiffs claim that the defendants' errors with respect to the contracted SEO services were committed with intent to cause injury and with "willful and conscious disregard of plaintiffs' rights, resulting in cruel and unjust hardship." *Id.* ¶ 40. They say that the defendants "falsely and fraudulently represented to Plaintiffs that they were experienced, qualified, and capable of performing all aspects of launching a professional search engine optimization service," but that those representations were false, defendants "knew them to be false," and that the plaintiffs would not have entered into the Agreement with the defendants had they known the truth. *Id.* ¶¶ 43-45. Finally, plaintiffs allege that the defendants' actions caused them severe emotional and psychological distress, for which they seek punitive damages. *Id.* ¶¶ 69-74.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In considering whether the complaint is sufficient to state a claim, the court accepts as true all of the factual allegations contained in the complaint. *Id*. However, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted). Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of

6

1  fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule

2  8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

## DISCUSSION

### A.  Late-Filed Opposition

As a preliminary matter, the plaintiffs did not file an opposition or otherwise respond to the defendants' motion to dismiss until almost a month after the deadline to do so.  When they did file an opposition to the Motion, they did not address this tardiness.  *See generally* Opposition/Response ("Oppo.") [Dkt. No. 18].  The defendants then chose not to file a substantive reply in support of their Motion but instead filed an "Objection" to the late-filed Opposition.  *See* Objections to Oppo. ("Obj.") [Dkt. No. 19].  In the Objection, the defendants did not respond to any of the plaintiffs' arguments but instead asked me to grant the Motion in light of the "failure to timely file an opposition . . . as required by the Court's Local Rules." *See* Obj. 2 (citing *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (holding that failure to timely file an opposition to a motion to dismiss as required by the Court's Local Rules can be grounds for granting the motion)).

If I granted the Motion on the basis of untimeliness, I would do so with leave to amend. Instead, the interests of judicial economy are best served by considering the arguments set forth by the plaintiffs in opposition to the defendants' Motion and ruling accordingly.

### B.  Plausibility of Plaintiffs' Claims

#### 1.  Breach of Contract (First Claim)

The standard elements plaintiffs must satisfy to prove breach of contract are " '(1) the contract, (2) plaintiff[s]' performance or excuse for nonperformance, (3) defendant[s]' breach, and (4) damage to plaintiff[s] therefrom.' " *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).  Defendants' sole argument for dismissing the breach of contract claim is this: because the plaintiffs received a refund for the fees that they paid Townsquare Interactive they cannot show damages in light of a liability limitation provision in the company's Terms of Service that prevents Townsquare Interactive customers from recovering damages beyond fees paid for its services.  *See* Mot. 12-13.  That argument is not credible because plaintiffs did not assent to Townsquare Interactive's Terms of Service when Cruz signed the Agreement.

7

1  But the breach of contract claim has other flaws that are apparent from the face of the complaint,
2  warranting dismissal.

### a. Defendants' Request for Judicial Notice

Under the "incorporation by reference" doctrine in this Circuit, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Courts may take into account "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel,* 393 F.3d at 1076 (alteration in original) (internal citation and quotation marks omitted). A court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie,* 342 F.3d at 908.

Throughout the Complaint, the plaintiffs refer to "Exhibit A" as the Agreement between the parties governing the defendants' SEO project for the plaintiffs, which they claim they attached to the complaint. *See generally* Compl. But the plaintiffs never actually attached that exhibit. The defendants attached it to their Motion. Defs' RJN Ex. A (the Agreement). The plaintiffs do not dispute its validity, and in fact reference it in their Opposition papers. I will incorporate the Agreement by reference and judicial notice of its existence.

As for the Terms of Service on Townsquare Interactive's website, which undergird some of the defendants' arguments in support of dismissal, the plaintiffs do not reference them in their pleadings or purport to have attached them to their original complaint, but they also do not dispute their authenticity. The defendants ask that I take judicial notice of a copy of the Terms of Service. *See* RJN Ex. B (Townsquare Interactive's Terms of Service, hereafter, the "Terms of Service"). Their request is granted.

### b. The Agreement and the Terms

The defendants argue that per Townsquare Interactive's Terms of Service, its liability for claims arising out of the Agreement's terms is limited to a "sum equal to the total amount of fees actually paid by client to Townsquare during the three (3) month period immediately preceding the arising of the relevant claim or action." RJN Ex. B (the Terms of Service). And since plaintiffs

concede that they were fully refunded for the amounts they paid under the agreement in mid-January 2023, *see* Compl. ¶ 36, defendants contend that there is "no claim for damages under the agreement." Motion 12.[6]

The Agreement that Cruz signed, however, does not include or incorporate Townsquare Interactive's Terms of Service. It states that "[b]y signing below, Customer acknowledges and agrees to the Terms and Conditions *included in this document*." RJN, Ex. A (emphasis added). "This document" refers to the one-page Agreement that Cruz signed, which lays out the "Packages/Services" included in Townsquare Interactive's website design offer package, including the "CORE PRODUCTS," "ADD ONS," and "DEDICATED SERVICE." *See id.* The Agreement also provides Townsquare Interactive's "Monthly Advertising Budget" of $199. The defendants do not address this problem with their argument.

The only reference to the Terms of Service that can be found in the Agreement is in its bottommost margin under the signature line, where the Agreement states Townsquare Interactive's physical address in Charlotte, NC, and includes a hyperlink to the company's Terms of Service. *See id.* ("Townsquare Interactive - 200 South Tryon Street, Suite 400 Charlotte, NC 28202 - townsquareinteractive.com/terms-of-service"). There is no indication that Cruz was prompted to click on the hyperlink before he signed the Agreement. The signature he provided did not indicate that he agreed to Townsquare Interactive's "Terms of Service," it only indicated that he agreed to the Terms and Conditions "included in this document," meaning the Agreement. *See* RJN, Ex. A.

The hyperlink is inconspicuous. It is not accompanied by instructions to review the Terms of Service it led to, is not presented in boldface, and does not appear to have been made distinct or highlighted in any other way. Courts have held that hyperlinks to Terms of Service are inconspicuous when they are "placed in a sentence next to a checkbox within the General Consent document without any instruction to read and review a new document," and "was not presented in

---

[6] The defendants also point out that the Terms of Service further limit Townsquare's liability for "special, indirect, incidental, punitive or consequential damages of any kind, including, without limitation, lost revenue, lost profits, loss of business or opportunity, or loss of use or data . . . whether under theory of contract, tort (including negligence), strict liability or otherwise." RJN, Ex. B.

boldface, even though boldface was used [elsewhere in the document],'' and where "bright . . . buttons" were not used to distinguish the hyperlink. *See e.g.*, *Doe v. Massage Envy Franchising, LLC*, 87 Cal. App. 5th 23, 31 (2022); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th (2021). In light of the foregoing, I conclude that Cruz was not on notice of the Terms of Service and its constituent liability limitation provision and did not assent to them.

This is consistent with guidance from the Ninth Circuit on the question of assent. As the court observed in *Nguyen v. Barnes & Noble Inc.*, in the context of determining whether a customer had constructive notice of an arbitration clause such that they could assent to its terms, "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." 763 F.3d 1171, 1175 (9th Cir. 2014). Courts have repeatedly refused to enforce the terms of a contract against a party who lacked notice of those terms. *See Nguyen*, at 1178 (citing *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 30 (2d Cir. 2002), for the rule that "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms."); *see also Hines v. OverStock.com*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) *aff'd* 380 Fed. App'x. 22 (2d Cir. 2010) (wherein the Court refused to enforce an arbitration provision because the plaintiff "lacked notice of the Terms and Conditions because the website did not prompt her to review the Terms and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions.").[7]

Here, the Terms of Service were not presented to Cruz "in a manner that made it apparent

---

[7] In their Motion, defendants analogize to *Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1159-60 (9th Cir. 2012), but *Davis* is distinct on the facts. There, the Ninth Circuit considered whether Davis had challenged the authenticity of certain documents before the district court such that the district court was wrong to incorporate them by reference when deciding the defendants' motion to dismiss. *See Davis*, 691 F.3d at 1159. The court found that Davis had not objected to the documents' authenticity before the district court and that, together with Davis's reliance on the contents of the documents in his own complaint, the district court was not wrong to incorporate them by reference. Here, in contrast, plaintiffs did not rely upon or reference the Terms of Service in their complaint, they only referenced the Agreement. And the plaintiffs do not contest the authenticity of the Terms of Service, they merely point out that the Agreement that Cruz signed did not incorporate them, meaning he did not assent to them, meaning that the limitation of liability clause contained therein does not apply to limit plaintiffs' damages now.

1   he was assenting to those very terms" when he signed the Agreement.  *See Doe*, 87 Cal. App. 5th

2   at 31.  To the contrary, the Agreement made it clear that Cruz was assenting to the Terms and

3   Conditions contained in the Agreement, which consisted of the one-page document above the

4   signature line.  Cruz did not assent to the liability limitation provision in Townsquare Interactive's

5   general Terms of Service merely by signing the one-page Agreement.

### c. The claim

Defendants' purported breach of the Agreement allegedly caused something like $150,000 in damages arising from lost business opportunities with a long-term client.  But it is not clear how Townsquare Interactive breached its terms.[8]

The Agreement sets forth that the "Package/Services" that Townsquare Interactive would provide included a "self-service website + free domain name or transfer," "convert[ing] client site to mobile site," and "search engine optimization," along with some other services.  *See* RJN, Ex. A.  Plaintiffs identify different flaws with the website revisions that Townsquare Interactive provided, some of which purportedly undermined the usability of their website after the redesign, *see e.g.*, Compl. ¶¶ 30, 31, 33, 34 (setting forth allegations of "non-functional buttons and incorrect titles, undermining the usability of the website," "failure to ensure security and functionality," which plaintiffs contend allowed their website to be hacked," and "fail[ure] to provide Plaintiffs with access to the account post-launch, impeding their ability to manage and control their website"), others of which identify what seem to be more aesthetic flaws, *see e.g.*, *id*. ¶¶ 29, 32, 35 (setting forth allegations of uncentered text, low resolution images, and generally "over-promising and under-delivering.").  But nowhere in the Complaint do the plaintiffs explain what provisions of the Agreement these purported deficiencies violated.  And as for the plaintiffs' allegation that the defendants breached the Agreement by launching the website "without Plaintiffs' approval," nothing in the Agreement mandates that the defendants secure the plaintiffs' express permission before launching a product they had been contracted to provide.  It does not

---

[8] Although plaintiffs name as defendants Townsquare Media, Townsquare Interactive, and Pirrone, the only party to the contract was Townsquare Interactive, and plaintiffs state no facts that would make the other defendants liable for breach of contract or any other claim.  Townsquare Media and Pirrone are DISMISSED for that reason with leave to amend.

1    appear from the face of the Agreement that the defendants promised to perform their work to a

2    certain degree of quality, or on a particular timeline, or with a particular level of involvement by

3    the plaintiffs. And they did perform some work on plaintiffs' behalf, though it apparently did not

4    rise to the level of quality that the plaintiffs expected.

5    For this claim to proceed, the plaintiffs must set forth facts from which I can infer what

6    contract provisions Townsquare Interactive allegedly breached and how it breached them. Only

7    then can I assess the plausibility of this claim.

8    Finally, while the damages are not throttled by the liability limitation in the Terms of

9    Service, the plaintiffs need to plead causation more specifically. The plaintiffs say that the

10   defendants' unsatisfactory work on their website caused them to lose a "long-term client" and

11   $150,000 of expected revenue. Compl. ¶ 39. But they do not explain how beyond vaguely

12   identifying "disruptions" in email communications. *See* Compl. ¶¶ 26, 38. For this claim to

13   proceed, the plaintiffs must set forth facts from which I can determine how Townsquare

14   Interactive's alleged wrongdoing caused the plaintiffs to lose revenue or be otherwise injured.

15   The motion to dismiss the breach of contract claim is GRANTED.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing (Third Claim)

"Under California law, every contract 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' " *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citation omitted). The covenant of good faith and fair dealing is violated by "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990); *see also id*. at 1393 ("[T]he 'implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose.' ") (internal citations omitted).

Although "breach of a specific provision of the contract is not a necessary prerequisite" to state a claim, "the scope of conduct prohibited by the covenant of good faith is circumscribed by

12

the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (Cal. 1992). That is, "the implied covenant of good faith and fair dealing 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.' " *Rosenfeld*, 732 F. Supp. 2d at 968 (citation omitted). At the same time, "if the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract [cause] of action, they may be disregarded as superfluous as no additional claim is actually stated." *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (citation omitted). One exception to this limitation is "where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits." *Id.*

Plaintiffs' allegations that the defendants "fail[ed] to complete the professional website as agreed" does not amount to a plausible claim for breach of the implied covenant. Compl. ¶ 51. This allegation relies on "the same course of conduct that underlies" their breach of contract claim. *Bard v. GSV Asset Mgmt.*, No. 23-cv-00488-WHO, 2023 WL 8852756, at *4 (N.D. Cal. Dec. 21, 2023); *see also Celador Int'l Ltd.*, 347 F. Supp. 2d at 852. Plaintiffs allege that defendants breached the Agreement by failing to deliver a professional and fully operational website. *See* discussion *supra*, Section B(1) (discussing breach of contract claim). Plaintiffs' claims for breach of contract and for breach of the covenant of good faith for failure to complete the website as agreed "rise and fall together." *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 11-cv-03638-SC, 2012 WL 1657121, at *8 (N.D. Cal. May 10, 2012). And their allegation that the defendants "fail[ed] to act in good faith," Compl. ¶ 51, does not identify any acts by the defendants that constituted bad faith. It is too generalized to plausibly state a claim. The motion to dismiss this claim is GRANTED, with leave to amend.

### 4. Fraudulent Deceit (Second Claim)

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005). Plaintiffs allege that defendants "falsely and fraudulently represented to Plaintiffs they

13

1 were experienced, qualified, and capable of performing all aspects of launching a professional search engine optimization service, including providing login access for Plaintiffs' company." Compl. ¶¶ 42-43. They further state that "[a]t the time Defendants made these representations, they knew them to be false, and these representations were made by Defendants with the intent to defraud and deceive Plaintiffs, and to induce Plaintiffs to act in reliance on them." *Id.* at ¶ 45.

Conclusory allegations such as these do not meet the heightened Rule 9(b) standard. The fraud claim utilizes the right key words, but the substance is missing. Without more specific allegations concerning what representations were made, when, to whom, and how those representations turned out to be false, this claim cannot proceed. The motion to dismiss this claim is GRANTED with leave to amend to set forth particular facts that, if true, would substantiate the fraud allegation.[9],[10]

### 5. Promissory Fraud (Claim Four)

As stated above, to plead a fraud claim, a party must allege (1) a knowingly false representation or fraudulent omission by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages. *See, e.g., Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003). Promissory fraud is a type of fraud. A plaintiff asserting a promissory fraud claim must set forth facts that, if true, would show that the defendant made a

---

[9] Defendants also argue that the fraudulent deceit claim is barred by the "disclaimer of warranties" provision in their Terms of Service. They argue that "[w]ith respect to element "(d), justifiable reliance," *Hinesley*, at 294, the parties' Agreement contains a DISCLAIMER OF WARRANTIES provision and integration clause that defeats any claim to justifiable reliance that the plaintiffs might assert. However, as discussed, what the defendants attach at RJN Ex. B, and refer to as "the Agreement" in their briefing is a wholly separate document from the contract that Cruz signed with Townsquare Interactive on November 30, 2022. What the defendants call "the Agreement" that contains a disclaimer of warranties and integration clause is actually the Townsquare Interactive general Terms of Service, which was not incorporated into the contract that Cruz signed. *See* discussion *supra* Section B(2).

[10] Finally, while the defendants do not address this in their motion, plaintiffs' damages claims for fraud appear to be barred under the economic loss rule because they arise from the same conduct that is purportedly the basis for breach of contract. *See e.g.*, *Chromadex Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 969 (C.D. Cal. 2017) (dismissing fraudulent deceit claim as barred by the economic loss rule where the claim was based on the defendants' same alleged false promises and representations that undergirded the plaintiffs' breach of contract claim, and where plaintiff's alleged injury arising from the fraudulent deceit was "simply economic harm resulting from the contract[.]").

14

promise to him that it had no intention of performing. See *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud"); *see also Cedars Sinai Med. Ctr. v. Mid–W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) ("A suit for fraud and deceit will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise."). Intent not to perform cannot be proved simply by showing a subsequent failure to perform. *Tenzer v. Superscope, Inc*., 39 Cal. 3d 18, 30–31 (1985).

Plaintiffs' promissory fraud claim arises from the same set of facts as their other claims. They allege that they entered into a contract with the defendants for the development of a website for their companies, *see* Compl. ¶ 57, paid them according to the terms of the contract, and the defendants failed to complete the work as promised, *see id.* ¶¶ 58-59. They add the conclusory allegations that "[d]efendants never intended to complete the work as agreed," *id.* ¶ 64, "failed to fully perform their promises and/or representations," *id.* ¶ 67, and that the plaintiffs were damaged as a result.

The plaintiffs fail to allege any false promise or false representation; indeed, they do not identify a promise or representation at all. They merely state that they entered into a contract with the defendants, the defendants performed "incomplete work," and "never intended to complete the work as agreed to or to meet professional standards." *Id.* ¶¶ 57-67. And even if the plaintiffs had pleaded a promise or representation outside the terms of the contract that they believe to have been false, they have not pleaded scienter. Allegations of scienter need not meet Rule 9(b) specificity requirements, but they need to be set forth.

In short, plaintiffs' promissory fraud claim is not plausibly alleged. It merely recites the elements of the claim, without pleading facts to substantiate those elements. See *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The motion to dismiss the promissory fraud claim is

GRANTED, with leave to amend.

### C. The Economic Loss Rule: Intentional Infliction of Emotional Distress (Claim Five) and Negligence (Claim Six)

The Supreme Court of California has held that, "[t]he economic loss rule requires a [party] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (citations omitted). The doctrine "is designed to maintain a distinction between damage remedies for breach of contract and for tort." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015). Defendants argue that plaintiffs' tort claims for intentional infliction of emotional distress ("IIED") and for negligence should be dismissed because they repackage the plaintiffs' breach of contract claims as tort claims, and do not allege any "harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988 (citations omitted).

I agree. Plaintiffs' negligence claim states that "[d]efendants have exhibited negligence in the execution of their contractual duties as outlined in the Agreement. Specifically, the website work, which was to be performed in accordance with the terms agreed upon, was carried out in a manner that fell below the required standard or, in some instances, was not performed at all . . . [constituting] a breach of the Defendants' contractual duty." Compl. ¶ 76. In that sense, it is an explicit repackaging of the breach of contract claim. And the IIED claim also does not add any new allegations, it only incorporates prior accusations about breach of contract. *See id.* ¶ 70. These claims, as pleaded, are barred by the economic loss rule.

Plaintiffs' only response is that the conduct underlying their negligence and IIED claims is "external" to the contract, therefore falling within a *Robinson Helicopter* exception. *See* Oppo. 5-6; *see also Robinson Helicopter*, 34 Cal. 4th at 992. They identify emails sent to Cruz by Townsquare Interactive, wherein the website design company "said that they would complete the requested work," and later said "that they would not." Oppo. 5-6; *see also* Compl. ¶¶ 15, 19. This theory of liability is not clear from the pleadings. If this is the plaintiffs' theory of negligence and IIED, then putting aside the fact that the facts pleaded would not satisfy the requisite elements of

16

negligence (which requires a showing of duty, breach of duty, causation, and damages, *see Carrera v. Maurice J. Sopp & Son*, 177 Cal. App. 4th 366, 377, (2009)), or IIED (which requires a showing of "outrageous conduct by the defendant," *see Bogard v. Employers Casualty Co.*, 164 Cal. App. 3d 602, 616 (1985)), then they should amend their tort claims to clarify that distinction.[11] The motion to dismiss those claims is GRANTED, with leave to amend.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED. Any amended complaint shall be filed within 20 days of the date below.

**IT IS SO ORDERED.**

Dated: July 23, 2025

William H. Orrick
United States District Judge

---

[11] The plaintiffs' complaint also fails to set forth facts that, if true, would satisfy the elements of a plausible negligence or IIED claim. The conduct that plaintiffs describe—failing to provide a website that met the plaintiffs' expectations, reasonable or otherwise—does not rise to the level of "outrageous" or "negligent" conduct. Like their promissory fraud claim, both the IIED and negligence claims merely recite the elements of such claims, which is insufficient to survive a Rule 12(b)(6) motion. See *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.